United States District Court
Central District of California

MICHAEL ABE, an individual,

    Plaintiff,

    v.

AFCH, INC., a California corporation; MICHAEL AMIRI, an individual; and DOES 1–10, inclusive,

    Defendants.

Case No. 2:20-CV-08193-ODW (PVCx)

**ORDER GRANTING MOTION TO DISMISS [13]**

## I.     INTRODUCTION

Plaintiff Michael Abe brought suit against Defendants AFCH, Inc., and Michael Amiri (collectively, "Defendants") for federal securities violations. (*See* Compl., ECF No. 1.) AFCH moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss ("Motion" or "Mot."), ECF No. 13.) The Motion is fully briefed. (*See* Opp'n, ECF No. 15; Reply, ECF No. 19.)

After the Court took the Motion under submission, Defendants notified the Court of a ruling in a related state court matter between the parties; Defendants argue the state court ruling precludes Abe's suit here. (Defs.' Notice & Req. for Judicial Notice ("RJN"), ECF No. 25.) The Court requested, and Abe provided, supplemental briefing on the preclusive effect of the state court ruling. (Order re Suppl. Br., ECF

No. 27; Suppl. Br. ("Suppl."), ECF No. 28.) For the reasons that follow, the Court **GRANTS** Defendants' Motion.[1]

## II.  BACKGROUND

AFCH is a California corporation in the fashion industry and Amiri is its Creative Director. (*See* Compl. ¶¶ 11–12.) Abe, a veteran of the fashion design industry, partnered with Amiri to help expand AFCH's business. (*Id.* ¶¶ 20–21.) On January 1, 2017, the parties executed an agreement granting Abe 5% of AFCH stock or 5,882 shares ("Grant Agreement"). (*Id.* ¶¶ 24–25, Ex. 1, ECF No. 5-1.) Later that year, a valuation by Rothschild & Co. valued AFCH at approximately $100 million ("Rothschild Valuation"). (Compl. ¶¶ 29, 35.)

In February 2018, Abe resigned from AFCH and, pursuant to the terms of the Grant Agreement, AFCH chose to repurchase half of Abe's equity interest, or 2.5% of AFCH stock (i.e., 2,941 shares). (*Id.* ¶¶ 39, 42.) To determine the value of Abe's equity, AFCH relied on a different valuation by Frank, Rimerman + Co. LLP (the "FRC Valuation"), which used more conservative financial figures than the Rothschild Valuation and estimated AFCH's value at $28,300,000. (*Id.* ¶¶ 48–55.) This resulted in Abe's 2.5% equity being worth $429,033.08 instead of the $2.5 million he had anticipated.[2] (*Id.* ¶¶ 44–49.) Abe disputed the FRC Valuation and obtained an independent appraisal, the "Vantage Valuation." (*Id.* ¶¶ 55, 57.) The Vantage Valuation used a third set of financials provided by AFCH and put AFCH's value at $66,790,000, with Abe's 2.5% equity worth $1,230,186. (*Id.* ¶¶ 56, 66.)

Rather than negotiate with Abe regarding the differing valuations, "AFCH instead hatched a fraudulent scheme to coerce Abe to sell *all* of his shares back to

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The Court notes these figures, and those in subsequent valuation allegations, raise unexplained inconsistencies. For instance, 2.5% of $28,300,000 is $707,500, not $429,033.08 as alleged. At the same time, Abe alleges FRC valued the shares at $145.88 each, (FAC ¶ 49), and 2,941 shares at $145.88 each is $429,033.08, but this per-share value puts 100% of shares at a total of $17,161,323.20, not $28,300,000. In any event, the precise figures are not dispositive for the purposes of this Motion and therefore the Court recounts Abe's allegations as pleaded.

AFCH . . . at far below their fair market value," by accusing Abe of trade secret violations and misconduct. (*Id.* ¶¶ 67–68.) Abe ultimately agreed to sell back all his stock to AFCH. (*Id.* ¶ 69.) Accordingly, on August 20, 2018, the parties executed a new "Stock Purchase Agreement" ("SPA"), under which AFCH would purchase all of Abe's AFCH stock at the greater of: (a) $1,000,000 or (b) the fair market value of the shares as determined, in good faith, by an appraiser in accordance with the Grant Agreement. (*Id.* ¶¶ 70–71, Ex. 2, ECF No. 5-2.)

Unbeknownst to Abe, around the time AFCH accused Abe of misconduct and before execution of the SPA, AFCH "secretly commissioned" the "Sorbus Valuation," which valued Abe's 5% equity at "significantly greater than $1 million." (Compl. ¶¶ 73–75.)[3]

After the parties executed the SPA, AFCH selected Armanino LLP to conduct the binding appraisal (the "Armanino Valuation"). (*Id.* ¶ 77.) "AFCH conspired to ensure that the Armanino Valuation [was] artificially low" by instructing Armanino to use an incorrect valuation date; inaccurate financial figures; different comparable companies than previous valuations; and the wrong analytical methodology. (*See id.* ¶¶ 80, 85–92.) The Armanino Valuation estimated AFCH's worth at $31.7 million, making the value of Abe's 5% equity $950,060. (*Id.* ¶ 92.)

Thereafter, in August 2019, Abe learned "from various sources" that an investor subsequently acquired a minority stake in AFCH for $40 million. (*Id.* ¶ 97.) Abe concluded that the investor's acquisition must have been based on a higher valuation than Armanino's, closer to the Rothschild $100 million estimate. (*Id.*) Accordingly, in September 2019, Abe demanded AFCH pay him the difference in value for his shares. (*Id.* ¶ 103; Opp'n 8.)

At approximately the same time, AFCH filed the State Action against Abe, asserting claims for trade secret violations and misconduct. (Compl. ¶¶ 5, 104.) In

---

[3] Abe learned of the Sorbus Valuation from discovery in the related state court action ("State Action") shortly before filing this federal suit; he alleges that he does not disclose its specifics because it is subject to a protective order in the State Action. (*Id.*)

August 2020, Abe counterclaimed against AFCH and asserted claims for California statutory securities fraud, among others. (*See* Decl. of Farbod Moridani ISO Defs.' RJN ¶ 4, Ex. B ("State Court Ruling") at 2, ECF No. 25-1.)

On September 8, 2020, Abe filed the instant Complaint asserting two claims under the Securities Exchange Act for: (1) violations of § 10(b) and Rule 10b-5 (against AFCH and Amiri); and (2) Control Person Liability under Section 20(a) (against only Amiri). (*See* Compl. ¶¶ 105–119.) Defendants move to dismiss the Complaint for failure to state a claim. (*See* Mot.)

### III. PRELIMINARY MATTERS

Both parties request that the Court take judicial notice of certain documents. (*See* Pl.'s RJN Exs. 1–3, ECF No. 18; Defs.' RJN.)

Abe's request for judicial notice is denied. It would be an improper use of judicial notice, and impermissible on a motion to dismiss, for the Court to judicially notice an unrelated Securities and Exchange Commission ("SEC") complaint and SEC press releases, as Abe requests, to "assist the Court in determining, at this pleading stage, whether in fact Plaintiff has sufficiently alleged a viable theory (or theories) of securities fraud." (*See* Pl.'s RJN); Fed. R. Evid. 201; *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (discussing that the scope of review on a motion to dismiss includes the complaint, "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice.").

Defendants' request for judicial notice is granted. The State Court Ruling is properly subject to judicial notice as it concerns litigation between the same parties with a direct relation to matters at issue here. *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting judicial notice of proceedings in other courts is proper "if those proceedings have a direct relation to matters at issue."). The Court does not take judicial notice of reasonably disputed facts in judicially noticed documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Finally, the Court does not consider the Declaration of Lisa Tahk (ECF No. 17), filed in support of Abe's

opposition, as it does not form the basis of the Complaint and therefore may not be considered on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### IV.       LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture*

*Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V. DISCUSSION

Defendants argue that the State Court Ruling precludes Abe's claims under principles of res judicata and the Complaint fails to state a claim upon which relief may be granted. (Defs.' RJN 2–6; Mot. 1–3.)

### A. Res Judicata

First, Defendants argue the State Court Ruling precludes Abe's claims. As the California Superior Court issued the State Court Ruling, California preclusion law applies. *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012) ("[A] federal court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))). Under California law, "res judicata" is "an umbrella term encompassing both claim preclusion and issue preclusion." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823 (2015).

Claim preclusion bars *causes of action* that were or should have been resolved in a prior suit involving the same parties, while issue preclusion bars relitigation of *issues* previously argued and decided. *Id.* at 824. "Claim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." *Id.* Issue preclusion applies: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *Id.* at 825. Both theories require finality. *See id.* Under California law, unlike federal preclusion law, "a judgment is not final for purposes of *res judicata* during the pendency of and until the resolution of an appeal." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985); *see Lightfoot v.*

*Cendant Mortg. Corp.*, No. CV-02-6568-CBM (AJWx), 2003 WL 27376888, at *4 (C.D. Cal. Feb. 20, 2003) (citing *Eichman* and discussing the differences in finality under California and federal preclusion law).

Defendants rely entirely on federal preclusion law for finality principles, and their arguments thus miss the mark.[4] The State Court Ruling will not be final until the time for appeal has closed or any appeal is resolved. *See Eichman*, 759 F.2d at 1439. Defendants offer no evidence that a final judgment has been entered in the State Action or that the time for appeal has closed. Indeed, the State Court Ruling did not dispose of all of Abe's claims—his claims for breach of contract and breach of the implied covenant of good faith and fair dealing survived demurrer. (*See* State Court Ruling 12.) Moreover, Abe states he filed a Petition for Writ of Mandate with the California Courts of Appeal challenging the State Court Ruling, and, once a final judgment is entered in the State Action, he "will [also] have the opportunity to challenge the Ruling" by filing an appeal. (Suppl. 3 n.1, 5.) Thus, it has not been established that the State Court Ruling is final *under California preclusion law* and res judicata does not operate to bar Abe's federal securities claims.[5]

## B. Failure to State a Claim

Next, Defendants argue that Abe's Complaint should be dismissed for failure to state a claim. Abe asserts two claims for federal securities violations, the first against AFCH and Amiri, for misrepresentations and omissions in connection with the purchase of Abe's AFCH stock, in violation of § 10(b) and Rule 10b-5 ("Claim One"), and the second against Amiri for control person liability under § 20(a) regarding the violations in Claim One ("Claim Two"). (Compl. ¶¶ 105–19.)

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and

---

[4] Many of Defendants' arguments could be viewed as bordering on misrepresentation. Granting the benefit of the doubt at this early stage, the Court simply reminds counsel of their duty of candor.

[5] As the Court finds finality lacking, it does not reach the parties' remaining res judicata arguments.

regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful, in connection with the purchase or sale of any security:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or[,]
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . .

17 C.F.R. § 240.10b-5. "Rule 10b-5 encompasses only conduct already prohibited by § 10(b). *Stoneridge Inv. Partners v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

"In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* "[T]he complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Sys.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (citing *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999), *superseded by statute on other grounds as recognized in In re Quality Sys. Sec. Litig.*, 865 F.3d 1130, 1146 (9th Cir. 2017)). In a private securities fraud case, a plaintiff must also comply with the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *In re VeriFone Holdings Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).

Defendants move to dismiss Abe's claims on the grounds that the Complaint fails to sufficiently allege actionable conduct, materiality, scienter, or with the requisite particularity. (*See generally* Mot.) As the Court finds particularity and scienter dispositive, it does not reach the remaining arguments.

*1. Particularity*

The heightened pleading requirements are "no small hurdle for the securities fraud plaintiff." *In re Verifone*, 704 F.3d at 701. Rule 9(b) requires that allegations be pleaded with particularity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "The PSLRA mandates that the complaint shall specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading . . . ." *In re Verifone*, 704 F.3d at 701 (brackets and internal quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)(1)(B)). Additionally, if allegations regarding a false statement under the securities act are based on information and belief, the plaintiff must "state with particularity all facts on which that belief is formed." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

Defendants argue Abe's allegations, that Defendants manipulated the Armanino Valuation by providing false financial information and directing Armanino to use the wrong methodology, are not sufficiently particular. (Mot. 12–14 (citing Compl. ¶¶ 80, 110).) Defendants also contend that Abe's numerous allegations based on "information and belief" are unsupported by any factual basis. (*Id.* at 15–16 (citing Compl. ¶¶ 36, 83–85, 94, 111).)

*a. Financial Information*

First, Defendants contend the Complaint fails to allege with the requisite particularity that they provided false financials to Armanino. (*Id.* at 12–14.) Abe alleges that Defendants manipulated the Armanino valuation to be artificially low by "submitting inaccurate financials to Armanino, [and] instructing Armanino to use non-comparable companies." (Compl. ¶ 80.) More specifically, he contends the Armanino Valuation used 2018 projections that were misleading because annualized January 2018 figures would have been more accurate. (*See id.* ¶¶ 87–89.)

At a minimum, these allegations fail to establish with the requisite particularity that the financial information Defendants provided to Armanino was false or that Defendants had "actual knowledge . . . that [it] was false or misleading." *See* 15 U.S.C. § 78u-5(c)(1) (requiring "actual knowledge" for allegations of false projections); *In re Quality Sys.*, 865 F.3d at 1149 (discussing safe harbor's "actual knowledge" requirement for projections); *Kniss v. Booth*, No. SA CV 07-1215 AHS (PJWx), 2010 WL 11506770, at *7 (C.D. Cal. June 29, 2010) (dismissing securities claim for failure to allege with particularity, among other things, that "defendants had actual knowledge that their projections were false or misleading" and that the projections "were false when made"). The Complaint is also impermissibly silent as to the misleading nature of the allegedly "non-comparable companies." *In re Verifone*, 704 F.3d at 701 (explaining that a PSLRA complaint may not be silent but must state "the reason or reasons why the statement is misleading" (quoting 15 U.S.C. § 78u-4(b)(1)(B))). In sum, the allegations regarding allegedly false financials lack sufficient particularity to support a claim for securities fraud.

### b. *Methodology*

Next, Defendants argue the Complaint fails to allege with the requisite particularity why the methodology Armanino used was fraudulent. (Mot. 14.) Abe alleges AFCH directed Armanino to use the "wrong analytical framework" and "if Armanino had applied the correct analysis, it would have reached a valuation similar to the [Vantage] Valuation." (Compl. ¶¶ 80, 83; Opp'n 16.) But, despite Abe's protestations, this boils down to simple disagreement over "two different judgments about the appropriate [analytical] methodology to be used," and not an allegation of falsity. *In re Rigel Pharms. Sec. Litig.*, 697 F.3d 869, 877–78 (9th Cir. 2012) ("[T]o allege falsity, a plaintiff must set forth facts explaining why the difference between two statements 'is not merely the difference between two permissible judgments, but rather the result of a falsehood.'"). The allegations here are not about false statements and cannot form the basis of a securities act claim. *Id.*

### c. *Allegations on Information and Belief*

Last, Defendants argue Abe's allegations on "information and belief" lack the requisite particularized factual support. (Mot. 15–16 (citing Compl. ¶¶ 36, 83–85, 94, 111).) Under the PSLRA, pleading on information and belief requires not only "why the statement is misleading" but also "all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *In re Verifone*, 704 F.3d at 701; *Zucco*, 552 F.3d at 991.

Abe alleges, on information and belief: "if Armanino had applied the correct analysis, it would have reached a [higher] valuation similar to the [Vantage] Valuation," (Compl. ¶ 83); if AFCH had provided Armanino with Abe's Vantage Valuation, Armanino would have reached "a higher valuation of Abe's stock," (*id.* ¶ 84); and "AFCH's instruction to Armanino to value Abe's shares as of January 31, 2018[,] instead of August 20, 2018[,] . . . unfairly reduced the share price," (*id.* ¶ 85). Abe also alleges, on information and belief, that AFCH was in talks to sell a minority stake to an investor during 2018 but did not disclose that to Armanino. (*Id.* ¶¶ 94–95.)

Abe does not support his information-and-belief allegations with "all facts on which [his] belief is formed." *See* 15 U.S.C. § 78u-4(b)(1). He appears to argue that the basis of his information-and-belief allegations is "obvious" and "known to Defendants," so the Complaint need not elaborate. (*See* Opp'n 16 (asserting the basis is "obvious and reasonable" and that the Complaint "detail[s] the source" of Abe's belief as confidential discovery produced in the State Action).) But these vague allusions to inferential support do not suffice under the PSLRA. Absent particularized factual allegations detailing the basis for Abe's information and belief, as required under the PSLRA, these allegations reflect merely speculation and fail to support a claim for securities fraud.

As Abe has failed to meet the heightened pleading requirements of the PSLRA or Rule 9(b), his claims fail for lack of particularity. Accordingly, the Court **GRANTS** Defendants' Motion on this basis. *See* 15 U.S.C. § 78u-4(b)(3)(B).

### 2. *Scienter*

Although Abe's claims fail for lack of particularity, the Court also briefly addresses the Complaint's deficient allegations of scienter. (*See* Mot. 16; Opp'n 17.)

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Under the PSLRA, the Court must view the Complaint in its entirety and compare allegations of scienter with other plausible explanations for the allegedly false or misleading statements, to determine whether there is a "cogent and compelling" "strong inference" of scienter. *Id.* at 322–24; *Zucco*, 552 F.3d at 991–92.

Abe alleges that Defendants had "motive and opportunity to commit fraud insofar as inducing Abe to sell his AFCH stock for inadequate consideration," (Compl. ¶ 111), but motive and opportunity "are not sufficient to establish [the] *strong inference*" of scienter required under the PSLRA. *Zucco*, 552 F.3d at 991. Abe argues that the strong inference of scienter may be found in Defendants' secretly commissioning the Sorbus Valuation and the alleged flaws in the Armanino Valuation, (Opp'n 17–18), but this, too, fails because other plausible explanations exist that are more compelling than the inference of deception, *see Tellabs*, 551 U.S. at 324 ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference . . . ."); (*see also* Reply 4 (discussing that "independent appraisals are commonly used both for . . . negotiations and diligence")). Finally, as discussed above, allegations of scienter based on information and belief lack the requisite factual support. Thus, the Complaint does not sufficiently allege scienter and Abe's claims fail on this additional ground.

### 3. *Claim Two against Amiri*

Defendants also move to dismiss Claim Two against Amiri because control person liability is derivative of Claim One. (*See* Mot. at 20–21.) A claim under Section 20(a) is dependent on a primary violation of § 10(b) or Rule 10b-5. *Zucco*,

552 F.3d at 990 (noting the existence of a primary violation is a prerequisite for control person liability under § 20(a)).  As the Court finds the Complaint fails to sufficiently plead a violation of § 10(b) or Rule 10b-5, the Court dismisses Claim Two against Amiri as well.

**C.     Leave to Amend**

Generally, a court should freely give leave to amend a dismissed complaint. *See* Fed. R. Civ. P. 15(a); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("[This] is especially important in the context of the PSLRA . . . [where] an unprecedented degree of specificity" is required.).  As the Court cannot conclude that any amendment would be futile, it **GRANTS** Abe leave to amend to cure the deficiencies identified above.  To survive another Motion to Dismiss, Abe must allege a strong, cogent, and compelling inference of scienter and plead facts with particularity beyond mere information and belief.

## VI.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss **with leave to amend**.  (ECF No. 13.)  Abe may file an amended complaint addressing the deficiencies identified above within twenty-one (21) days of the date of this Order.  If Abe files an amended complaint, Defendants must file their response in accordance with Rule 15(a)(3).

**IT IS SO ORDERED.**

June 1, 2021

_____
                **OTIS D. WRIGHT, II
        UNITED STATES DISTRICT JUDGE**